SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff-Appellee Cross Appellant,

v.

DUDDS, INC., et al., Defendants-Appellants Cross Appellees,

v.

SABINE BANK & TRUST CO., Defendant-Appellee Cross Appellee.

No. 79–4016.

United States Court of Appeals, Fifth Circuit.

Unit A

June 16, 1981.

enforce payment under terms of an insurance policy which insured its physical plant that was destroyed by fire. Security raised arson as a defense but the district court held that Security failed to meet its burden of proof and ordered payment of $110,334.89, plus interest.

Later, the court directed that the proceeds be paid directly to Sabine State Bank & Trust Company pursuant to a loss payable clause in the insurance contract. In addition, the court ruled that Dudds' attorney was not entitled to any compensation from Sabine, since his contract had been with Dudds only.

Security seeks review of the judgment against it, insisting that it was proven that an agent of Dudds started the fire. Dudds appeals the denial of compensation for its attorney.

We affirm in all respects.

Aubrey Richard Snell, Bossier City, La., for defendants-appellants cross appellees.

E. L. Edwards, Jr., Many, La., for Sabine State Bank & Trust Co.

Charles G. Tutt, Shreveport, La., for Security Ins. Co. of Hartford.

Before WISDOM, COLEMAN and RANDALL, Circuit Judges.

COLEMAN, Circuit Judge.

Security Insurance Company of Hartford filed an interpleader complaint to prevent Dudds, Inc. from proceeding against it in a state court action. Dudds' action sought to

### The Facts

At approximately 8:30 p. m. on March 11, 1978, a fire destroyed the physical plant, equipment and inventory of Dudds, Inc., located in Pleasant Hill, Louisiana. The next day, Robert E. Posey, Jr., a deputy state fire marshal, was called to investigate the fire. No trace of accelerants was found, but Posey testified to his *opinion* that the fire was of incendiary origin, an opinion based upon the fact that there was spalling[1] on the concrete slab outside the building. Posey also testified, however, that the building, once a gymnasium, was in such a state that it had previously been condemned and that he was not surprised that it burned.[2]

---

1. On direct examination, Mr. Norval Terry, an arson investigator, defined spalling as follows:

   Q. [Plaintiff's Attorney] Can you describe what you mean by this term [spalling]?
   A. Masonry, or concrete, really never cures out to the extent—there is always some moisture in it.
   If you have any flammable hydrocarbon that is placed on this intense heat, that is generated by burning of the hydrocarbon, it makes the moisture part or particles within the concrete to explode.
   It comes to the top and leaves a marked area within the concrete. This is, more or less, the general definition of spalling [sic].

2. On cross examination, Mr. Posey testified as follows:

   Q. [Defense Attorney] Had you ever been in Dudds plant prior to the fire?
   A. Yes, sir. I had been in there several times.
   Q. Did you find it to be somewhat in a kind of a fire trap, itself?
   A. It's a fire trap, period.
   Q. Did it surprise you that it had burned?
   A. Not a bit in the world.

Nine days after the fire, Norval Terry, an arson investigator based in Grand Prairie, Texas, arrived at the scene. Terry testified that after a six day investigation he concluded that the fire was of incendiary origin. Terry's determination was also based upon the fact that there was spalling found on the concrete outside. In addition, Terry noted that the fire moved very fast and against the wind.

In the early afternoon of the day of the fire, William Glascock, managing officer of Dudds, visited the Dudds plant in the company of a friend, Mark Warren. Glascock testified that he had picked up a key from Alvis Abshire, an employee, but did not enter the locked building. Glascock and Warren returned that evening to Shreveport (approximately 60 miles from Pleasant Hill) where they received several phone calls from Pleasant Hill employees informing them that the Dudds plant was burning. Warren testified that he answered the first phone call because Glascock was in the bathroom and could not come to the phone, but ten minutes later Glascock took a second call. Martha Dunne, a Dudds employee testified that she called and talked to Glascock at his home at approximately 9:00 p. m.

The only evidence directly connecting Glascock with the fire came from his former wife, Martha A. Bogarts. Mrs. Bogarts was in Alabama on the date of the fire but returned to Shreveport the following week and claimed that she overheard Glascock tell Warren that he set the fire. Mrs. Bogarts, who by her own admission had been planning to divorce Glascock for three years prior to the trial, is now married to Glascock's present wife's ex-husband. Her relationship with Glascock was described by the district court judge as "bitter! bitter! bitter!"

Security insists that it has proven motive since Dudds was in some financial difficulty and Glascock, along with Dudds, was solidarily liable for one $25,000.00 note.

### Arson

Under Louisiana law arson may be proven by circumstantial evidence; however, the evidence must be so convincing that it will sustain no other reasonable hypothesis. *Sumrall v. Providence Washington Insurance Co.*, 221 La. 633, 60 So.2d 68 (1952). The arson issue was basically one of fact. The court below had the advantage of hearing the oral testimony and was therefore in position to make credibility judgments; we do not set aside findings of fact unless clearly erroneous. 28 U.S.C. Rule 52. After a review of this record, we certainly cannot say that the court below was in error in its determination that Security failed to prove the defense of arson. We need not linger over the much debated issue of how the fire began. The point is that Dudds' participation was not shown to the satisfaction of the trier of the fact.

### Attorney's Fees

The final question is whether Dudds' attorney is entitled to receive compensation from Sabine Bank, although he had a contingency contract with Dudds and no contract with the bank. Dudds makes the appealing argument that since its attorney carried the burden of defending the claim of arson and the bank received the resulting recovery he should share in the proceeds. However, the difficulty is that under Louisiana law the right of an attorney to recover fees is based upon contract, regardless of the value and benefit others have derived from his services. *Hal V. Lyons v. City of Shreveport*, 339 So.2d 466 (La.App.1976), writ denied 341 So.2d 905 (La.1977). Since the bank was at all times represented by its own counsel, we must agree with the district court decision that Dudds' attorney is not entitled to receive compensation from Sabine Bank.

For the reasons stated the Judgment of the District Court is AFFIRMED.